# In the United States Court of Federal Claims

No. 19-1898

Filed: March 31, 2023

|  |  |
|---|---|
| NATHANAEL DILLARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

*Wojciech Kornacki,* Pentagon Law Office, Washington, DC, for plaintiff.

*Elizabeth Marie Pullin*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

**OPINION AND ORDER**

*SMITH*, **Senior Judge**

      This action is before the Court on the parties' Cross-Motions for Judgment on the Administrative Record. On May 17, 2021, plaintiff, Nathanael Dillard, filed an amended complaint alleging, *inter alia*, that the United States Navy ("Navy") wrongfully discharged him, denied him due process rights, and acted contrary to Navy regulations when it simultaneously processed him for misconduct and unsatisfactory performance. *See* Amended Complaint at 1–18, ECF No. 18 [hereinafter Am. Compl.]. Plaintiff therefore argues that the Board for Correction of Naval Records' ("BCNR") decision denying his requested relief of compensatory damages and correction of military records is arbitrary, capricious, and contrary to substantial evidence. *See id.* at 17. For the following reasons, the Court denies plaintiff's Motion for Judgment on the Administrative Record and grants defendant's Cross-Motion for Judgment on the Administrative Record.

    **I.**    **Background**

    **A.**    **Plaintiff's Administrative Separation**

      Plaintiff Nathanael Dillard served in the Navy from May 13, 1999, until January 13, 2017. Administrative Record 6, 8, ECF No. 16 [hereinafter AR]. During his tenure, plaintiff reenlisted on October 12, 2006; February 2, 2011; and May 21, 2014. AR 6. In late 2014, plaintiff was assigned to the United States Navy Recruiting District in San Antonio, Texas. AR

6. On June 30, 2015, plaintiff's Commanding Officer initiated an investigation into allegations that plaintiff had engaged in a prohibited relationship with a future sailor's mother, Ms. Jennifer Vidal ("Ms. Vidal"). *See* Commander, Navy Recruiting Command Instruction ("COMNAVCRUITCOMINST") 5370.1G *Fraternization*, August 21, 2014 (defining fraternization in relevant part as "[a]ny personal relationship prejudicial to good order and discipline, or of a nature to bring discredit on the naval service . . . [and] exists when . . . [a] personal relationship develops between recruiting personnel and family members of prospects, applicants, or Future Sailors"); *see also* AR 346. According to plaintiff, Petty Officer Kennedy was recruiting future sailor when Ms. Vidal asked plaintiff to look after him. AR 220. During the investigation, plaintiff was interviewed about his misconduct, and he provided a statement on August 24, 2015, indicating that he did not have a relationship with Ms. Vidal, that he did not pursue a personal relationship with her, or plan a trip with her to Corpus Christi, Texas. *See* AR 248–49, 228. The investigating officer reviewed Facebook Messenger messages between plaintiff and Ms. Vidal, which included messages about gym workouts, lunch and/or dinner dates, and a weekend trip to Corpus Christi, Texas, and concluded that plaintiff had engaged in an inappropriate relationship with Ms. Vidal as defined by COMNAVCRUITCOMINST 5370.1G. AR 235.

On August 27, 2015, plaintiff received non-judicial punishment for failure to obey a lawful order (i.e., the prohibition against forming personal relationships with the family of recruits) in violation of Article 92, Uniform Code of Military Justice, and for making a false official statement (i.e., that he falsely stated that he did not meet with Ms. Vidal outside of normal recruiting practices) in violation of Article 107, Uniform Code of Military Justice. AR 6. Plaintiff pled guilty to both charges and his punishment included an admonition and forfeiture of pay for two months. AR 129, 308, 474. On November 10, 2015, USN Recruiting District, San Antonio, Texas submitted a forced conversion package due to a lack of confidence in plaintiff's ability to remain in the Navy Career Counselor rating. AR 112. On May 26, 2016, plaintiff's request was denied because the "needs of the Navy [did] not support conversion." AR 440.

On June 8, 2016, the Navy formally notified plaintiff that he was being processed for involuntary discharge from the Navy for three reasons:

(1) unsatisfactory performance due to his "failure to complete change of rating" (i.e., transferring to another position in the Navy);

(2) misconduct – commission of a serious offense "by wrongfully forming a personal relationship" with Ms. Vidal; and

(3) misconduct – commission of a serious offense by making a false official statement that he had not met Ms. Vidal "outside of normal recruiting practices."

AR 226–27. That same day, plaintiff elected for a hearing before the Administrative Separation Board ("ASB"). AR 226.

On August 3, 2016, plaintiff attended his ASB hearing. AR 215. Plaintiff was represented by counsel and was permitted to make opening statements, closing arguments,

submit evidence, make evidentiary objections, and examine witnesses. AR 215–24. During this hearing, the ASB heard testimony from Operations Specialist Second Class Davis, Master Chief Reeves, and plaintiff. AR 215–24. The ASB unanimously found that the record did not support the allegation of unsatisfactory performance by failure to complete a change in rating, but did support the allegations of misconduct for the commission of serious offenses "by wrongfully forming a personal relationship" with Ms. Vidal and making a false official statement that he had not met with Ms. Vidal "outside of normal recruiting practices." AR 461. By a vote of 2 to 1, the ASB recommended plaintiff's retention in the Navy. AR 461.

On August 12, 2016, plaintiff's Commanding Officer, Navy Recruiting District San Antonio, sent a four-page memorandum, along with the underlying record of the ASB proceedings, to the Assistant Secretary of the Navy for Manpower and Reserve Affairs ("Assistant Secretary") recommending that plaintiff instead be separated from the Navy. AR 211–14. In the memorandum, the Commanding Officer argued that plaintiff should be separated because: (1) he does not have any potential for future service in the Navy; (2) he abused his authority as a senior recruiter and Chief Petty Officer by pursuing a sexual relationship with Ms. Vidal; (3) he lacks integrity because he lied about the nature of the relationship with Ms. Vidal during the investigation and in his sworn statement at the ASB hearing; and (4) he failed to convert to a new rating in the Navy. *See* AR 211–14.

Additionally, on December 1, 2016, the Commander, Navy Personnel Command, sent a two-page memorandum to the Assistant Secretary, attaching the Commanding Officer's August 2016 memorandum and concurring with the Commanding Officer's recommendation of separating plaintiff. *See* AR 423–24. In the memorandum, the Commander ultimately recommended separating plaintiff with a "General (under honorable conditions) discharge, separation code GKQ, misconduct (serious offense)." AR 424.

On January 13, 2017, plaintiff was separated by the Assistant Secretary for misconduct (serious offense) with a discharge characterization of service of under honorable conditions (general), and a reentry code of RE-4, representing his ineligibility for reenlistment. AR 59; *see* Bureau of Navy Personnel Instruction 1900.8 CH-3, Encl. 2.

### B. Procedural History

On December 13, 2019, plaintiff, through counsel, filed a complaint with this Court alleging wrongful discharge and due process violations, seeking monetary damages and correction of military records. *See* Complaint at 1, ECF No. 1. On February 7, 2020, defendant moved to remand the matter to the BCNR to allow the Navy to consider plaintiff's allegations regarding the Commanding Officers' memoranda, which the BCNR had not reviewed yet, and to further develop and clarify the record with regards to plaintiff's performance. *See* Defendant's Unopposed Motion for Remand and Stay at 3–5, ECF No. 5. On February 11, 2020, this Court granted the Motion for Remand and Stay for six months to allow the BCNR to consider the claims asserted by plaintiff. *See* Order Remanding Case, ECF No. 6.

On March 13, 2020, plaintiff petitioned the BCNR, requesting the following relief:

-3-

(1) change his personnel records to indicate that he was not discharged on January 13, 2017, but continued to serve without interruption on active duty;

(2) change his personnel records to indicate that he was honorably retired with twenty years in service instead of separated with a general discharge under honorable conditions by reason of misconduct;

(3) "change his DD Form 214 to indicate that his characterization of service was honorable" and change his separation and enlistment code to other; and

(4) provide monetary compensation and backpay to the fullest extent permitted by law for the wrongful discharge.

*See* AR 35. On February 10, 2021, the BCNR issued a split decision, voting 2 to 1 to deny plaintiff's requested relief, but with one board member proposing partial relief in the interest of justice. *See* Decision on Remand of The Board for Correction of Naval Records, ECF No. 13. Specifically, the Assistant Secretary adopted the recommendation of Board Member Two, granting plaintiff partial relief through the following: (1) upgrading his discharge characterization from under honorable conditions (general) to honorable, (2) revising his separation code—originally misconduct (serious offense)—to secretarial authority; and (3) changing his reentry code from RE-4 (ineligible for reenlistment) to RE-1J (eligible for reenlistment). *See* AR 18; *see also* Bureau of Navy Personnel Instruction 1900.8 CH-3, Encl. 2. If the Assistant Secretary approves the recommendation of the BCNR, the Assistant Secretary is not required to set forth the basis for their decision in writing. *See* Secretary of Navy Instruction ("SECNAVINST") 5420.193, Encl. 3, § 8.c (Nov. 19, 1997).

On May 17, 2021, plaintiff filed an amended complaint in this Court in which he contested the BCNR's decision and sought full relief. *See* Am. Compl. That same day, plaintiff filed his Motion for Judgment on the Administrative Record. *See* Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 19 [hereinafter Pl.'s MJAR]. On May 6, 2022, defendant filed its Response to plaintiff's Motion and its Cross-Motion for Judgment on the Administrative Record. *See* Defendant's Cross-Motion for Judgment on the Administrative Record, ECF No. 42 [hereinafter Def.'s CMJAR]. On June 3, 2022, plaintiff filed his Reply in Support of his Motion for Judgment on the Administrative Record and Response to the Cross-Motion for Judgment on the Administrative Record. *See* Plaintiff's Reply and Response in Support of his Motion for Judgment on the Administrative Record, ECF No. 43 [hereinafter Pl.'s Reply]. On July 15, 2022, defendant filed its Reply in Support of its Cross-Motion for Judgment on the Administrative Record. *See* Defendant's Reply in Support of its Cross-Motion for Judgment on the Administrative Record, ECF No. 46 [hereinafter Def.'s Reply]. The parties' Motions are fully briefed and ripe for review.

## II.   Standard of Review

This Court's jurisdictional grant is primarily defined by the Tucker Act, which provides this Court the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive

department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although the Tucker Act expressly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). To fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part).

The Court reviews decisions of military correction boards based upon the administrative record. *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009). When a party requests judgment on the administrative record under Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"), the Court makes findings of fact as if it were conducting a trial on the record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005). The Court must determine "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A & D Fire Prot., Inc., v. United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum*, 404 F.3d at 1356).

A deferential standard applies when reviewing military personnel decisions, and this Court "will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005) (citing *Haselrig v. United States,* 333 F.3d 1354, 1355 (Fed. Cir. 2003)). The agency must articulate a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). The plaintiff must overcome the presumption of regularity which attaches to military actions and military records correction boards. *See Armstrong v. United States,* 205 Ct. Cl. 754, 762–63 (1974) (noting that "[p]resumption favors the validity of official military acts," including those of a military records correction board, absent evidence to the contrary). Finally, if the plaintiff identifies an error in the administrative proceedings, the "plaintiff still would have to establish that the error was prejudicial, i.e., that it affected the [agency's] ultimate conclusion . . . ." *Fisher v. United States*, 81 Fed. Cl. 155, 158-59 (2008), *aff'd*, No. 2008-5094, 2010 WL 4009437 (Fed. Cir. 2010).

### III.   Discussion

#### A.   Notice

Plaintiff alleges that the Navy violated its own regulations and military instructions because the Commanding Officers' post-ASB hearing memoranda contained new allegations of misconduct without giving plaintiff notice or an opportunity to defend himself. *See* Am. Compl. at 12–13, 14–16; *see also* Pl.'s MJAR at 21–22. Defendant argues that the allegations contained in the memoranda were not new because they have a basis in plaintiff's ASB hearing record, and therefore plaintiff had notice of the allegations. *See* Def.'s CMJAR at 18–22. This Court is inclined to agree with defendant for the reasons set forth below.

This Court has held that in order to ensure adequate notice of the content of post-ASB hearing memoranda written by commanding officers, the memoranda must be based on

information that was contained in the servicemember's military record or the rest of the record before the ASB. *See Rogers v. United States*, 124 Fed. Cl. 757, 768–770, 774 (2016) (holding that remarks in a commanding officer's memorandum related to plaintiff's character and leadership were permissible because they had a basis in the ASB hearing record, but remarks based on derogatory statements by unnamed third parties were impermissible because they lacked a basis in the ASB hearing record). Therefore, in order to determine if plaintiff received adequate notice of the statements in the memoranda, the statements must be reviewed to determine if they have a basis in plaintiff's ASB hearing or military record. *See Rogers v. United States*, 124 Fed. Cl. at 768–770.

### i. Untruthful Statements

The Commanding Officers' August 2016 memorandum and the December 2016 memorandum (collectively referred to as the "memoranda") assert that plaintiff made untruthful statements to the Command Investigator during the investigation and in his sworn testimony.[1] *See* AR 213–14 (stating that plaintiff "lied during the investigation and . . . during his sworn statement at the [ASB hearing]"; "made an entirely false statement" under oath; and exhibited a "consistent pattern of lying"). Plaintiff posits that he lacked notice of the various allegations of untruthful statements proffered in the memoranda because he was notified that he was being separated for making one false statement. *See* Pl's Reply at 8, 15–16. Plaintiff further asserts that there is no evidence to support that he was untruthful during the ASB hearing. *See id.* at 19–20. Defendant responds that all the allegations relating to plaintiff's untruthful statements contained in the memoranda have a basis in the ASB hearing record, and therefore plaintiff had notice of the allegations via his ASB hearing record. *See* Def.'s CMJAR at 18–22.

For the reasons set forth below, the Court finds that the Commanding Officers' statements regarding truthfulness have a basis in the ASB hearing record, thus giving plaintiff adequate notice. The ASB hearing record supports that plaintiff provided conflicting statements in various Facebook messages and in his August 24, 2015, statement to the investigator. AR 249–97. Specifically, in plaintiff's August 24, 2015, statement, plaintiff was asked by the investigator, "[d]id you ever meet with [Ms. Vidal] outside of normal recruiting practices," to which plaintiff responded, "no." AR 249. However, Facebook messages demonstrate that plaintiff and Ms. Vidal met for coffee at IHOP and another day for lunch. *See* AR 283–84, 258–61 (showing Facebook messages between plaintiff and Ms. Vidal—plaintiff: "Come get me for lunch today (HuHot)"; Ms. Vidal: "Ok. Yay!!").

Further, the ASB hearing record supports that plaintiff made other inconsistent statements. In plaintiff's August 24, 2015, statement to the investigator, plaintiff was asked, "[d]id you ever plan a trip with [Ms. Vidal] to Corpus Christi, TX," to which plaintiff responded, "no." AR 249. However, Facebook messages demonstrate that plaintiff planned a trip with Ms. Vidal. *See* AR 285–96 (showing Facebook messages between plaintiff and Ms. Vidal—plaintiff: "We are getting away this weekend"; Ms. Vidal: "Ok… sounds like a plan…."; plaintiff: "Could you sleep next to someone all night and nothing happen sexually? . . . Okay. So you, me, beach,

---

[1] The Commander's December 2016 memorandum concurs with the Commanding Officer's August 2016 memorandum. *See* Administrative Record 423–24, ECF No. 16 [hereinafter AR]. Accordingly, references to the Commanding Officer's August 2016 memorandum encompass both memoranda. *See* AR 211–14, 423–24.

sunset…I'm not seeing sleep in this equation . . . You said Corpus. Leaving Saturday morning coming back Sunday."). Taken together, there is a basis in the ASB hearing record for the Commanding Officers' comments that plaintiff made untruthful statements.

### ii. Statements Regarding Using Position as Recruiter to Pursue Sexual Relationship

The memoranda also state that plaintiff used his position as a recruiter to pursue a sexual relationship with Ms. Vidal. *See* AR 213, 423. Plaintiff argues that there is no evidence for the Commanding Officers' statements that he used his position as a recruiter to pursue a sexual relationship with Ms. Vidal. *See* Pl.'s Reply at 19. Defendant responds that the ASB hearing record provides a basis for the Commanding Officers' statements. *See* Def.'s CMJAR at 19.

The Court finds that there is a basis in the ASB hearing record for the Commanding Officers' statements in the memoranda that plaintiff used his position as a recruiter to pursue a sexual relationship with Ms. Vidal. In addition to the above-quoted Facebook messages, additional Facebook messages within the ASB hearing record between plaintiff and Ms. Vidal provide support for the assertion that plaintiff pursued an intimate relationship with Ms. Vidal. *See* AR 275–78 (showing Facebook messages between plaintiff and Ms. Vidal—Ms. Vidal: "So I'm curious to know . . . do you usually take notice to the mommas you come across? Or am I just a lucky one"; plaintiff: "You have a nice smile, you're direct, you take care in how you look and conduct yourself (sic). I'm not taking initiative I'm just checking the scenery out. Lol . . . You're the Scenery Silly…."; Ms. Vidal: "I know..lol…."). Further, witness testimony at the ASB hearing from Operations Specialist Second Class Davis provide support for the memoranda's statements. *See* AR 217–18 (showing a transcript of Witness Davis's testimony at the ASB hearing—Davis: "[future sailor] said at first [plaintiff] was calling so much he thought he was his recruiter. [Plaintiff] seemed to show favoritism to [future sailor] because he was trying to date his mom . . . [w]e had a discussion with [plaintiff] to stop dipping into our recruits and let the recruiters handle their own prospects.").

Accordingly, there is a basis in the ASB hearing record for the statements in the memoranda that plaintiff used his position as a recruiter to pursue a sexual relationship with Ms. Vidal. As such, plaintiff had adequate notice and an opportunity to defend himself at the ASB hearing.

### iii. Statements Regarding a Written Reprimand

The Commander's December 2016 memorandum refers to a "written reprimand." AR 423. Plaintiff asserts that he received a verbal admonishment rather than a written reprimand, that a written reprimand is not included in the ASB hearing record, and that the written reprimand was recorded in error by the Navy. *See* Pl.'s MJAR at 9–10, 21–22; *see also* Pl.'s Reply at 8 (citing AR 129, 308, 471). Plaintiff further asserts that this error partially caused the Navy to separate him. *See* Pl.'s Reply at 17. Defendant asserts that the ASB hearing record documents the reprimand as being in writing, thus providing a basis in the ASB hearing record for the Commander's statement. *See* Def.'s Reply at 2 n.4 (citing AR 307–09).

The ASB hearing record reveals two instances where a "written reprimand" is referenced: (1) in a July 10, 2015, preliminary inquiry report; and (2) in an August 27, 2015, Nonjudicial Punishment Memorandum. AR 308, 474. Thus, there is a basis in the ASB hearing record for the Commanding Officer's statement that the reprimand was in writing. In any event, if the Navy documented this in error, the Court holds that this was harmless error because plaintiff has not demonstrated that this "error was prejudicial, i.e., that it affected the [Navy]'s ultimate conclusion." *See Fisher*, 81 Fed. Cl. at 158–59 (2008).

### B. Naval Regulations

#### i. Content of the Memoranda

Plaintiff argues that he was prejudiced by the Commanding Officers' memoranda, which "provided factually incorrect, embellished and misleading information" contrary to military regulations. *See* Pl.'s Reply at 18–19 (citing Department of Defense Instruction ("DoDI") 1332.14 and Naval Military Personnel Manual ("MILPERSMAN") 1910-600). Defendant responds that the memoranda are in accordance with the regulations at issue because the statements are based on evidence in the ASB hearing record. *See* Def.'s CMJAR at 5, 10, 18–19.

Plaintiff points to two military regulations that purportedly impose requirements on the substance of a commanding officer's memorandum: (1) DoDI 1332.14, Encl. 5, § 3(f)(4)(b)(2) and (2) MILPERSMAN 1910-600 § 3(1)(k). *See* Pl.'s Reply at 18–19. Under DoDI 1332.14, when the ASB recommends retention, as is the case here, commanding officers are authorized to either approve the ASB's recommendation or forward the case to the Secretary "with a recommendation for separation based upon the circumstances of the case." DoDI 1332.14, Encl. 5, § 3(f)(4)(b)(2). Additionally, MILPERSMAN 1910-600 provides a memorandum template used when forwarding a case to the Secretary. Pursuant to that template, commanding officers provide certain information about the case, including their own comments regarding the case with a directive to "[e]nsure a clear picture of what/when/why is provided." MILPERSMAN 1910-600 § 3(1)(k).

In view of the applicable regulations, the BCNR's decision finding no error or injustice regarding the Commanding Officers' memoranda was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence. The Commanding Officers' memoranda followed the template format prescribed by MILPERSMAN 1910-600. *See* MILPERSMAN 1910-600. In the memoranda, the Commanding Officers reference the ASB hearing record and provide an explanation of their recommendation to separate plaintiff based on the circumstances of his case. *See* AR 211–14, 423–24. The Commanding Officers enumerate their disagreements with the ASB's findings and recommendation, including their own conclusions regarding plaintiff's statements and pursuit of a relationship with Ms. Vidal. *See* AR 211–14, 423–24. Thus, it appears that the Commanding Officers' comments have a basis in the record and are relevant to the circumstances of plaintiff's case. Accordingly, it was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence for the BCNR to find that the memoranda did not violate the relevant military regulations. *See* DoDI 1332.14, Encl. 5, § 3(f)(4)(b)(2); MILPERSMAN 1910-600 § 3(1)(k).

### ii. Factors Considered for Separation or Retention of Servicemember

Plaintiff alleges that the Navy failed to consider the factors listed under MILPERSMAN 1910-212 and DoDI 1332.14 Enclosure 4, § 1(b)(4) regarding his separation. *See* Am. Compl. at 15–16; Pl.'s MJAR at 16–17; *see also* Pl.'s Reply at 16.[2] Defendant responds that each Commanding Officer's comments within the memoranda are tied to the applicable factors under DoDI 1332.14 Enclosure 4, § 1(b)(4). *See* Def.'s CMJAR at 19–20; Def.'s Reply at 5–6.

MILPERSMAN 1910-212 provides that the following factors "should" be considered on the issue of retention or separation: (1) the seriousness of the offense, (2) the likelihood of a recurrence, (3) the sailor's potential for further service, and (4) the sailor's military record. DoDI additionally lists six factors that "may" be considered on the issue of retention or separation, depending on the circumstances of the case:

> (a) The seriousness of the circumstances forming the basis for initiation of separation proceedings, the effect of the enlisted Service member's continued retention on military discipline, good order, and morale;
>
> (b) The likelihood of continuation or recurrence of the circumstances forming the basis for initiation of separation proceedings;
>
> (c) The likelihood that the enlisted Service member will be a disruptive or undesirable influence in present or future duty assignments;
>
> (d) The ability of the enlisted Service member to perform duties effectively in the present and in the future, including potential for advancement or leadership;
>
> (e) The enlisted Service member's rehabilitative potential; and
>
> (f) The enlisted Service member's entire military record.

DoDI 1332.14, Encl. 4, § 1(b)(4).

The issue at present is whether the Navy considered the factors listed above regarding plaintiff's retention or separation. Indeed, the Court finds that the Navy considered each of these factors before plaintiff's separation—but the Court notes that MILPERSMAN 1910-212 are factors that the Navy should consider, whereas the factors under DoDI 1332.14, Enclosure 4 may be considered. To that end, this Court will focus on MILPERSMAN 1910-212, although many of these factors are similar, if not identical, to the factors listed under DoDI 1332.14, Enclosure 4, § 1(b)(4). Accordingly, the Court need not go further than its review of the BCNR's decision

---

[2] This Court notes that plaintiff specifically identifies the Administrative Separation Board ("ASB"), instead of the Navy or Defendant, as the administrative body which should have complied with the regulations at issue. *See* Plaintiff's Reply and Response in Support of his Motion for Judgment on the Administrative Record at 16, ECF No. 43. This Court need not review this specific allegation as it is reviewing the decision from the Board for Correction of Naval Records ("BCNR") and whether those factors that "should" have been considered, were indeed considered by the BCNR. In any event, for the reasons articulated within this section, the record supports that these factors were put forth and considered by the ASB even though it was not necessary. *See* AR 217–18.

to separate plaintiff and whether that decision considered the four factors under MILPERSMAN 1910-212.

Within the ASB's record of proceedings, both parties argued their respective positions regarding retention or separation including the four factors under MILPERSMAN 1910-212, which was accepted and made part of the record. AR 217–18. These proceedings were provided, along with the Commanding Officers' memoranda discussed above, to the BCNR. *See* AR 4, 7. The BCNR considered the ASB proceedings, among other relevant documents in the record, and memorialized their own findings in its review of plaintiff's naval record. AR 7 (Board for Correction of Naval Records Review of Plaintiff). Additionally, the BCNR considered plaintiff's entire military record, stating that it reviewed plaintiff's "long and distinguished service in the Navy, as evidenced by his nearly 18 years of service." AR 11. Further, the BCNR considered the seriousness of the offense and likelihood of reoccurrence, stating that it reviewed the circumstances of his separation and plaintiff's misconduct was a "singular departure from otherwise honorable service." AR 11.

As to plaintiff's potential for future service, each BCNR member reached a different conclusion regarding plaintiff's retention. Board Member One wrote that plaintiff had been "assigned to a position of trust and confidence" to which his violation was "so egregious, and potentially damaging to the reputation of the U.S. Navy that the mitigating circumstances were not sufficient to warrant relief." AR 13. Board Member Two wrote that although this was an "isolated incident of misconduct," there was not "sufficient mitigating evidence to warrant relief" from the Secretary's decision to separate plaintiff. AR 14. Board Member Three disagreed with the other board members' conclusions, arguing that the Navy committed several errors or injustices in its separation of plaintiff, so "the only appropriate relief" is to "correct the injustice by granting [plaintiff] constructive credit to attain 20 years of active service and retire." AR 16. Thus, while all board members reached a different conclusion, every board member considered plaintiff's "potential for further service."

Therefore, the BCNR considered all four factors under MILPERSMAN 1910-212, so there is no basis in the record to conclude that the BCNR acted arbitrarily, capriciously, or contrary to law.

### iii. Processing of Plaintiff's Separation

Plaintiff argues that his separation from the Navy was improper because he was processed for both "unsatisfactory performance" and "misconduct" in violation of military regulation. *See* Am. Compl. at 13–14 (citing MILPERSMAN 1910-156 and 1910-133). Defendant responds that the Navy's decision to process plaintiff for misconduct and failure to convert was "discretionary" and not an error. *See* Def.'s Reply at 2 n.2.

MILPERSMAN 1910-156 states that a service member "should not be processed for separation based on unsatisfactory performance for failure to complete the change of rating if they qualify to be processed for misconduct." MILPERSMAN 1910-156 § 3(b). Furthermore, MILPERSMAN 1910-133 states that service members "meeting the criteria for [administrative separation] due to **misconduct** must be processed for [administrative separation] under the

appropriate MILPERSMAN article(s) within the 1910 series." MILPERSMAN 1910-133 § 3 (emphasis in original).

The record reflects that plaintiff was processed for both "unsatisfactory performance" for failure to convert, and "misconduct." *See* AR 226 (Administrative Separation Processing Notice). This supports plaintiff's claim that the Navy erred when processing plaintiff's separation. However, "[t]o recover back pay, it is not enough for the plaintiff to show merely that an error or injustice was committed in the administrative process." *Christian v. United States*, 337 F.3d 1338, 1343 (Fed. Cir. 2003). Plaintiff must "make a showing that the defect substantially affected the decision to separate him . . . , or at least he must set forth enough material to impel the court to direct a further inquiry into the nexus between the error or injustice and the adverse action." *Id.* (quoting *Hary v. United States*, 223 F.2d 704, 707 (Ct. Cl. 1980)). In other words, plaintiff must demonstrate that the Navy's error was prejudicial and affected its decision to separate him. *See Fisher v. United States*, 81 Fed. Cl. 155, 158–59 (2008), *aff'd*, No. 2008-5094, 2010 WL 4009437 (Fed. Cir. Oct. 14, 2010) ("plaintiff still would have to establish that the error was prejudicial, i.e., that it affected the Board's ultimate conclusion").

The Court finds that plaintiff has not met his burden of demonstrating that the Navy's error—regarding the processing of his separation—affected the Navy's decision to separate him from service. Specifically, plaintiff's submitted briefs allege these harms but do not provide supporting material to demonstrate to the Court how this administrative error "substantially affected the decision to separate him" nor allow the Court to find a "nexus between the error or injustice and the adverse action." *See* Pl.'s MJAR at 22 ("[t]he prejudice here is that the Navy improperly added another ground of separation that was specifically prohibited . . . ."); *see also* Am. Compl. at 14 ("Defendant improperly combined the failure to convert with other misconduct as grounds for separation . . . ."); *Christian*, 337 F.3d at 1343. Without more, plaintiff has neither established how the Navy's error was prejudicial nor presented the Court a basis on which to overturn the Navy's decision. *See Fisher*, 81 Fed. Cl. at 159 ("We have been presented with no basis for overturning either the original Board's ultimate conclusion, or the second Board's reevaluation of that conclusion.").

Further, the record reflects that the Navy's error was harmless because plaintiff was discharged for serious misconduct—not unsatisfactory performance for failure to convert. Indeed, plaintiff's Certificate of Release or Discharge from Active Duty states that plaintiff was separated for "misconduct (serious offense)." *See* AR 59 (DD Form 214). Plaintiff's discharge form does not indicate any other reason for separation. *See* AR 59. On review, the BCNR did not even consider "unsatisfactory performance" as a basis for plaintiff's separation. *See* AR 11–14. Instead, the BCNR focuses on plaintiff's serious misconduct rather than on any administrative error in plaintiff's processing paperwork. *See* AR 11–14. Therefore, the Court finds the Navy's error in processing plaintiff for both serious misconduct and unsatisfactory performance harmless.

### C. Rationale for BCNR Recommendation

Plaintiff argues that the Navy's decision is arbitrary and capricious because it "failed to explain its rationale in denying [plaintiff] his back pay and benefits." Pl.'s Reply at 21. Plaintiff further argues that the Navy does not provide a "satisfactory explanation[]" for why it adopted BCNR Board Member Two's recommendation over Board Member Three's recommendation. *See* Am. Compl. at 16–17; *see also* Pl.'s Reply at 21, 23. In response, defendant argues that "[t]here was nothing arbitrary or improper about the Navy's decision" as it was supported by substantial evidence. Def.'s Reply at 7–8. Defendant further argues that the BCNR provided a "detailed analysis," with each board member's recommendation reflecting careful consideration of plaintiff's application. *See* Def.'s CMJAR at 22–23 ("[T]he BCNR decision revealed careful consideration of the petition and analysis of the substantial evidence supporting discharge outlined above."). The Court is inclined to agree with defendant.

The Court does not find that the record supports that the Navy's decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. The Court acknowledges that the Navy is entitled to "substantial deference in the governance of its affairs." *See Antonellis v. United States*, 723 F.3d 1328, 1332 (Fed. Cir. 2013) (quoting *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed. Cir. 1993)). Further, the Court recognizes that it is not within its purview to make decisions regarding a soldier's fitness to serve in the armed services, "and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *See Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983).

First, the Court finds that the Assistant Secretary properly adopted the recommendation of BCNR Board Member Two. On review, this Court looks at "the rationale underlying the Secretary's decision to determine if the decision was arbitrary, capricious, unsupported by substantial evidence, or in violation of law." *Strickland v. United States*, 423 F.3d 1335, 1339 (Fed. Cir. 2005). If the Assistant Secretary adopts a recommendation, then this Court reviews that decision "in terms of the [BCNR]'s rationale." *Id*. The Assistant Secretary is required to provide a written rationale only when the Assistant Secretary disagrees with the BCNR and rejects its recommendation. *See* 32 C.F.R. § 723.7 (stating that the Secretary must include a written rationale for their decision "unless he or she expressly adopts in whole or in part the findings, conclusions and recommendations of the Board, or a minority report"); *see also* SECNAVINST 5420.193, Encl. 3, § 8.c. Accordingly, the Assistant Secretary was not required to provide an explanation as to why BCNR Board Member Two's recommendation was adopted. Thus, the Navy's decision was not arbitrary or capricious when the Assistant Secretary adopted the BCNR recommendation without providing additional rationale.

Second, the Court finds that the BCNR provided sufficient rationale to support its overall considerations and individual recommendations. The relevant regulations require the BCNR to "make written findings, conclusions and recommendations." *See* 32 C.F.R. § 723.6(a)(3). Upon a denial, as is the case here, the BCNR is only required to provide a brief statement of the grounds for denial, including the reasons for the determination that relief should not be granted. *See* 32 C.F.R. § 723.3(e)(4). Ultimately, "in the context of judicial review of military personnel decisions, '[a]ll that is required is sufficient notification to the serviceman to permit him, if he

-12-

may, to rebut the [BCNR]'s action.'" *Volk v. United States*, 111 Fed. Cl. 313, 333–34 (2013) (citing *Craft v. United States*, 210 Ct. Cl. 170, 181 (1976)). The Court will uphold a decision of "less than ideal clarity," if the Court can reasonably discern the Board's actions. *See Sokol v. United States*, 120 Fed. Cl. 144, 151 (2015) (internal quotation omitted).

Here, the Court finds that the BCNR met that standard of sufficient notification to the plaintiff. The BCNR carefully reviewed plaintiff's application of injustice and error regarding his separation from the Navy. *See* AR 11; *see also* 32 C.F.R. § 723.3. In that review, the BCNR considered plaintiff's military record, the ASB hearing record, and factors regarding plaintiff's character. *See* AR 4–18. On review of the essential facts of his application, the BCNR explicitly "considered all of [plaintiff]'s contentions of error or injustice." AR 11.

For example, the BCNR addresses plaintiff's contention that the Commanding Officer's memorandum "exaggerated" plaintiff's misconduct and that the Navy "therefore relied on inaccurate information," stating that the August 12, 2016, Commanding Officer's memorandum was an expression of her opinion and "did not create new facts, and was not factually incorrect in her description of [plaintiff's] misconduct." AR 12. On that same point, the BCNR addresses plaintiff's allegation that he was denied due process by stating that the ASB complied with the Enlisted Administrative Separations Manual, and that the August 12, 2016, Commanding Officer's Memorandum did not embellish or create new facts to which plaintiff was denied his due process rights. AR 12.

In addition, the BCNR considered the relevant mitigating factors in determining, under a totality of the circumstances, whether plaintiff should be granted relief in the interest of justice. AR 13 (acknowledging plaintiff's "long and mostly honorable service to the Navy, his post-service contributions to society, and that the conduct in question was most likely an aberration in an otherwise meritorious career."). The BCNR considered plaintiff's entire military record and post-service accomplishments, stating that this "warrants partial relief in the form of an upgrade to [plaintiff's] characterization of service." AR 14. The BCNR noted that plaintiff "continued to provide honorable service after being punished for his misconduct" and that he has "demonstrated a commitment to public service since his discharge from the Navy." AR 14. To that effect, the BCNR concluded that the positive aspects of plaintiff's record "outweigh[] the isolated incident of misconduct." AR 14. The BCNR, specifically Board Member Two, recommended plaintiff's characterization of service reflect "honorable"—rather than under honorable conditions (general). *See* AR 14.

Based on the foregoing, it is clear to the Court how and why the BCNR decided to deny plaintiff his requested relief. The BCNR's decision reflects a detailed analysis of plaintiff's entire military record as well as the serious misconduct at issue. Therefore, the BCNR decision provided sufficient notification to plaintiff to permit him to rebut the Agency's action before this Court. *Cf. Craft*, 210 Ct. Cl. at 181 (granting plaintiff relief when plaintiff was "left in the dark as to the basis for the unfavorable decision."). Accordingly, this Court finds that the Navy's decision was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

**IV.       Conclusion**

For the reasons set forth above, plaintiff's MOTION for Judgment on the Administrative Record is **DENIED**. Defendant's CROSS-MOTION for Judgment on the Administrative Record is **GRANTED**. The Clerk is directed to enter judgment in favor of defendant, consistent with this opinion.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge